UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CR 24-85 DWF/DLM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **INDICTMENT** |
| | ) | |
| v. | ) | 18 U.S.C. § 157 |
| | ) | 18 U.S.C. § 1343 |
| JAMES ANTHONY KROGER, | ) | 18 U.S.C. § 1957 |
| | ) | |
| Defendant. | ) | |

THE UNITED STATES GRAND JURY CHARGES THAT:

1. At times relevant to this Indictment:

### Introduction

a. Defendant JAMES ANTHONY KROGER is a professor of business and accounting and a resident of Cottonwood, in the State and District of Minnesota.

b. Lone Star Municipal Finance Company LLC was a Wyoming close limited liability company formed between KROGER and Individual A in October 2019 to serve as a real estate joint venture between them. The purpose of the joint venture was to invest in real estate in Texas that was being sold at public auctions due to unpaid taxes.

c. Baron of Alyth, Inc. was an Ohio corporation formed in October 2019 as a single-purpose entity to fund Individual A's investment in Lone Star.

SCANNED
APR 02 2024
U.S. DISTRICT COURT MPLS

  d. Intelligent Technology, Inc. was a Wyoming corporation formed in October 2019 as a single-purpose entity to hold KROGER's interest in Lone Star.

  e. Baron of Alyth and Intelligent Technology were the only two members of Lone Star.

  f. Between February 2019 and May 2021, defendant KROGER devised and carried out a scheme to defraud Individual A, as Lone Star's sole investor, embezzle over $690,000 that Individual A had invested in Lone Star, and launder the proceeds.

  g. KROGER proposed that the joint venture with Individual A would acquire the tax deeds to the properties and make a profit by (a) selling the property back to the delinquent taxpayer/debtor; (b) renting the properties to tenants; or (c) improving and re-selling the properties.

  h. Individual A agreed to join the joint venture on account of KROGER's representation that this business opportunity would be a "low-risk" investment with a high upside. In November and December 2019, Individual A funded Lone Star with approximately $840,000 to facilitate the purchase of tax deed properties.

  i. Between 2019 and 2021, KROGER managed the day-to-day operations of Lone Star while Individual A provided all investment capital for

the joint venture. In his role, KROGER had access and signing authority to Lone Star's bank account at Wells Fargo.

j. According to the Lone Star Operating Agreement, which KROGER drafted, KROGER, as the Chief Executive Manager, would be allowed to lend himself up to $200,000 per year of Lone Star's money to himself as a member. The Operating Agreement required any loans to be "bona fide" and include a "duly executed note."

## The Scheme to Defraud Lone Star

2. From in or about 2019 through in and about 2021, in the State and District of Minnesota, and elsewhere, the defendant,

**JAMES ANTHONY KROGER**,

did knowingly and intentionally devise and execute a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

3. It was a part of the scheme to defraud that from 2019 through in or about 2021, KROGER used his position as Chief Executive Manager of Lone Star to embezzle funds from the company for his personal use. KROGER did this by transferring over $480,000 from Lone Star's Wells Fargo bank account to his personal bank accounts between November 2019 and February 2020, each with a memo line of "loan" or "expense reimbursement."

*United States v. James Anthony Kroger*

4. KROGER spent the funds he transferred from Lone Star on extravagant personal purchases. These purchases included large cash withdrawals, purchases of gold and silver bullion, checks to family members, paying off loans against insurance policies, and retail and travel purchases from Amazon, eBay, Apple, Delta, and other vendors.

5. KROGER never provided Individual A with any signed or executed note or loan agreement. Individual A was unaware of the total amount of the transfers.

6. It was a further part of the scheme that KROGER originally devised how he could receive "loans" from the company. KROGER claimed that receiving his salary as a loan would allow him to appear "poor on paper," which in turn would allow him to avoid taxes, remain eligible for his free, state subsidized health insurance, and get a substantial portion of his student loans forgiven. KROGER informed Individual A he could "perfectly paper" the loans to ensure they met all Internal Revenue Service requirements for a loan. Individual A believed that any loans issued from Lone Star to KROGER would be to cover KROGER's basic living expenses.

7. It was a further part of the scheme that KROGER convinced Individual A to make additional investments in Lone Star after his initial investment of $640,000 in November 2019.

*United States v. James Anthony Kroger*

8. In December 2019, Kroger coordinated the purchase of two properties in Texas for Lone Star through an agent representative, Texas Sales Tax Resource Group, for a total of $56,000. After these properties were purchased, KROGER repeatedly asked Individual A to transfer an additional $500,000 to the company, making statements such as "I could possibly get $1 million deployed in the next 3-4 months."

9. In December 2019, Individual A transferred an additional $200,000 to the Lone Star account because KROGER indicated it was necessary to further fund Lone Star's real estate investment program. Instead, KROGER transferred an additional $200,000 to his own personal bank account. On January 7, 2020, KROGER coordinated the purchase of a third property in Texas using funds from the Lone Star business account for $106,500.

10. It was a further part of the scheme that in February 2020, KROGER facilitated an amendment to Lone Star's operating agreement to increase his annual loan amount from the company from $200,000 to $250,000. KROGER requested this increase to purportedly pay his taxes. KROGER, however, did not use the funds to pay his taxes. Instead, he wired most of the funds to a separate personal bank account and spent the entire amount on personal expenses, including credit card payments and transfers to his

brokerage account. Once again, KROGER never provided Individual A with any signed or executed note or loan agreement.

11. After Individual A discovered KROGER's scheme, KROGER fraudulently continued to spend Lone Star funds without authorization. In April 2020, KROGER requested that Texas Tax Sales Resource Group wire $169,735.62 in Lone Star funds held by Texas Tax Sales Resource Group to Intelligent Technology, a company solely controlled by KROGER. KROGER went on to transfer all of these funds from Intelligent Technology to his Wells Fargo personal bank account.

12. In January 2021, almost a year after Individual A discovered KROGER's embezzlement, KROGER transferred the three Texas properties from Lone Star to Kroger Dynasty Holdings, another separate company owned by him exclusively. KROGER did so without Individual A's authorization.

13. KROGER sold one of the three Texas properties to an unrelated bona fide purchaser in May 2021 for $23,978.15 and retained the proceeds himself. Individual A eventually recovered the remaining two properties via a civil lawsuit and sold them at fair market value.

14. In total, KROGER embezzled over $690,000 from Lone Star, including rent payments for the Texas properties and funds derived from the sale of one of the properties in 2021. KROGER has not made meaningful efforts to repay Lone Star beyond a few hundred dollars.

15. KROGER attempted to conceal his scheme by preparing false estimates for Individual A of how much money he had taken as "loans" and what the funds were spent on.

16. KROGER further concealed his scheme by preparing fraudulent Master Promissory Notes that falsely represent he has repaid Lone Star over $48,000.

## The Defendant's Money Laundering Scheme

17. KROGER took steps to further conceal his scheme by laundering significant portions of the money he fraudulently took from Lone Star.

18. KROGER made 19 purchases of gold and silver bullion totaling over $198,000 from coin dealers between November 2019 and August 2021. The purchases were made with funds transferred from Kroger's Wells Fargo checking account and on his credit cards. Most of the purchases aligned with transfers of funds that KROGER made from Lone Star's bank account to his personal checking account.

19. KROGER went on to resell most of the coins he purchased back to dealers. Between December 2020 and August 2021, KROGER sold $186,000 worth of gold and silver to coin dealers. In one sale in August 2021, a coin dealer wrote KROGER a check for $70,050 for the purchase of coins. The following day, KROGER cashed the check at bank in Sioux Falls, South Dakota, where he did not have an account.

20. On January 2, 2020, the same day he fraudulently transferred $200,000 from Lone Star's bank account, KROGER wrote a check for a brand new 2019 Chevrolet Colorado truck for $32,900. On April 1, 2021, KROGER wired $11,470 to a private seller for the purchase of a 1996 Cadillac Fleetwood. KROGER put both vehicle titles in his mother's name.

21. KROGER also laundered Lone Star funds by wiring $45,000 from his Wells Fargo checking account to his SunTrust personal bank account on February 18, 2020, just days after transferring $50,000 from Lone Star's account.

## Kroger's Bankruptcy Scheme

22. KROGER made a final effort to conceal his scheme by filing a fraudulent petition for Chapter 7 bankruptcy in June 2022, which contained numerous false statements and misrepresentations, and continuing to make false statements and misrepresentations during the bankruptcy proceeding. KROGER's false statements and misrepresentations included the following:

    a. KROGER falsely stated in his petition that the funds he had embezzled from Lone Star were "business debts."

    b. KROGER falsely stated that he had minimal possessions, electronics, or household goods, when in fact he had purchased thousands of dollars' worth of Apple products, medical equipment, and other retail goods.

  c. KROGER made false statements at his Meeting of Creditors related to the truthfulness and completeness of his bankruptcy petition.

  d. KROGER concealed his interests in various personal property and vehicles, as well as cash, checks, and financial accounts.

  e. KROGER failed to disclose or adequately provide documentation related to certain financial assets or positions, including bank account balances, gold and silver purchases, gambling losses, or insurance policies.

  f. KROGER failed to account for various sham purchases and lease agreements he had entered into with his mother.

## Counts 1-9
### (Wire Fraud)

23. Paragraphs 1 through 22 are incorporated by reference as if fully set forth herein.

24. On or about the dates set forth below, in the State and District of Minnesota and elsewhere, the defendant,

**JAMES ANTHONY KROGER**,

for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, and sounds, as described below:

*United States v. James Anthony Kroger*

| Count | Date (on or about) | Wire Details |
|---|---|---|
| 1 | August 8, 2019 | A wire communication from KROGER's Google email account while he was located in Minnesota to a Google email account for Individual A, while he was located in the United Kingdom. |
| 2 | December 17-18, 2019 | A wire communication in the form of a text message from KROGER's Apple iPhone while he was located in Minnesota to an Apple iPhone for Individual A, while he was located in the United Kingdom. |
| 3 | January 1, 2020 | A wire communication from KROGER's Apple iPhone while he was located in Minnesota to an Apple iPhone for Individual A, while he was located in the United Kingdom. |
| 4 | February 13, 2020 | A wire communication from KROGER's Apple iPhone while he was located in Minnesota to an Apple iPhone for Individual A, while he was located in the United Kingdom. |
| 5 | February 18, 2020 | A wire communication from KROGER's Google email account while he was located in Minnesota to a Google email account for Individual A, while he was located in the United Kingdom. |
| 6 | April 14, 2020 | A $169,735.62 wire transfer from Texas Tax Sales Resource Group LLC to Intelligent Technology. |
| 7 | September 23, 2020 | A wire communication from KROGER's Google email account while he was located in Minnesota to a Google email account for Individual A, while he was located in the United Kingdom. |
| 8 | January 28, 2021 | A wire communication from KROGER's Google email account while he was located in Minnesota to a Google email account for Individual A, while he was located in the United Kingdom. |

*United States v. James Anthony Kroger*

| 9 | May 28, 2021 | A $ $23,978.15 wire transfer from Texas Access to Justice Foundation / Gary Trammel to KROGER. |

All in violation of Title 18, United States Code, Section 1343.

## Counts 10-12
(Money Laundering)

25. Paragraphs 1 through 24 are incorporated by reference as if fully set forth herein.

26. On or about the dates set forth below, in the State and District of Minnesota and elsewhere, the defendant,

**JAMES ANTHONY KROGER**,

27. knowingly engaged and attempted to engage in monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, as described below, such property having been derived from specified unlawful activities, namely, wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Date (on or about) | Transaction |
|---|---|---|
| 10 | January 2, 2020 | Payment of $32,900 to Cleveland Chevrolet for the purchase of a 2019 Chevrolet Colorado truck. |
| 11 | February 18, 2020 | A transfer of $45,000 from KROGER's Wells Fargo checking account to KROGER's SunTrust checking account. |

11

| 12 | August 27, 2021 | A check for $70,050 payable to KROGER from Coins & Collectables that KROGER cashed at First National Bank of Sioux Falls. |

All in violation of Title 18, United States Code, Section 1957.

## Count 13
### (Bankruptcy Fraud)

28. Paragraphs 1 through 27 are incorporated by reference as if fully set forth herein.

29. In or around June through December 2022, in the State and District of Minnesota, the defendant,

**JAMES ANTHONY KROGER**,

with the intent to devise a scheme and artifice to defraud and for the purpose of executing and concealing said scheme and artifice, made false and fraudulent representations, claims, and promises concerning and in relation to a proceeding under Title 11, United States Code,

In violation of Title 18, United States Code, Section 157.

### FORFEITURE ALLEGATIONS

30. Counts 1-12 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c).

*United States v. James Anthony Kroger*

31. Upon conviction of any of the offenses alleged in Counts 1 through 9, as set forth in this Indictment, defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to the violation, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), including but not limited to:

    a. 2019 Chevrolet Colorado, bearing VIN: 1GCGTDENXK1171045 and Nebraska license plate # WIC831; and

    b. 1996 Cadillac Fleetwood, bearing VIN: 1G6DW52P8TR711312 and Minnesota license plate #9RF565.

32. As a result of the offenses alleged in Counts 10 through 12 of this Indictment, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a) any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of such violation.

33. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) and by Title 28, United States Code, Section 2461(c).

*United States v. James Anthony Kroger*

## A TRUE BILL

_____   _____
UNITED STATES ATTORNEY          FOREPERSON