UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 24-85 (DWF/DLM) |
| Plaintiff, | |
| v. | **ORDER OVERRULING DEFENDANT'S OBJECTION** |
| James Anthony Kroger, | |
| Defendant. | |

## INTRODUCTION

The United States (the "Government") moved for the detention of Defendant James Anthony Kroger. Following a detention hearing, Magistrate Judge Schultz ordered that Kroger be detained pending trial (the "Detention Order"). (Doc. No. 24.) Magistrate Judge Schultz further ordered that Kroger be evaluated by a mental health professional to advise the Court on further conditions that may be imposed. (*Id.*) Kroger objects to the Detention Order. (Doc. No. 38.) After an independent review of the record and objections, the Court overrules Kroger's objections and orders that he remain in custody.

## DISCUSSION

Kroger has been charged with nine counts of wire fraud, three counts of money laundering, and one count of bankruptcy fraud. (Doc. No. 1.) The Government sought Kroger's detention on the grounds that there is a serious risk that Kroger "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2)(B).

Probation and Pretrial Services initially recommended that Kroger be conditionally released but then amended its Bail Report, recommending that Kroger be detained pending a mental health evaluation. (*See* Doc. No. 24 at 2.)

At the detention hearing, the Government submitted evidence that Kroger sent two mailings to federal officials—Kroger Report Part 1 (Doc. No. 9) and Kroger Report Part 2 (Doc. No. 10)—in response to the Government's investigation into Kroger's alleged fraudulent conduct. Kroger also filed a criminal complaint against those involved in the investigation.

The Magistrate Judge concluded that the Kroger Reports "contain intimidating and threatening rhetoric directed at specific individuals involved in some manner in his federal case," including witnesses against him. (Doc. No. 24 at 3.) Kroger threatens to "punish" these individuals and discusses seeking their execution. The Magistrate Judge concluded that the threatening and intimidating language "could be considered to cross the line into direct threats toward these individuals." (*Id.*) The Magistrate Judge thus determined that detention was warranted based on danger to the community should Kroger be released pending trial, noting "serious concerns" about Kroger's "impulsiveness and mental health" in light of the Kroger Reports. (*Id.* at 4.)

Kroger now objects to the Detention Order. The Court reviews the factual findings and conclusions of law in the Detention Order *de novo*. *United States v. Maull*, 773 F.2d 1479, 1484 (8th Cir. 1985). A defendant may be detained pending trial "if the government shows by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community." *United States v. Abad*,

350 F.3d 793, 797 (8th Cir. 2003) (internal quotations and citation omitted) (emphasis omitted); 18 U.S.C. § 3142(e)-(f).

Kroger argues that Government reads too much into the Kroger Reports. He asserts that the reports contain "no threat against anyone beyond the use of the legal process." (Doc. No. 38 at 4.) While the reports reference five individuals involved in the investigation of Kroger's alleged fraudulent conduct, he argues that the "pain, punishment or sacrifice" referenced in the reports refers only to the "$2 trillion dollars that he seeks to recover." (*Id.*) Kroger further asserts that he only makes "legal threats" against U.S. Attorney Andrew Luger. (*Id.* at 5.) Moreover, Kroger argues that "the Court could easily impose a condition restricting Mr. Kroger from further written communications with various individuals or entities to address this concern." (*Id.* at 7.)

In response, the Government argues that Kroger attempts to minimize the severity of the content in his reports. In the reports, Kroger calls for the "execution and death penalty of members of the federal government, including the judiciary, and government witnesses against him in his criminal case." (Doc. No. 43 at 10.) In addition, the Government notes the timing of the threats. Kroger sent the Kroger Report Part 2 "the night before he was to self-surrender to the Marshals in his criminal case." (*Id.* at 11.) The Government further argues that while Kroger has no criminal history, both his impulsiveness and troubled mental state are alarming. And the Government has information that indicates that Kroger possesses multiple firearms.

The Court concludes that the Kroger Reports contain threats that go beyond the mere threat of the legal process. In the Kroger Report Part 2, for example, Kroger

3

appears to fantasize about the death of U.S. Attorney Andrew Luger. Kroger repeatedly states that Luger "is to be executed." (Doc. No. 10 at 7.) He states that he would prefer a "nationally televised hanging." (*Id.* at 6.) At one point, Kroger asks Luger if he can "already feel that needle in [his] arm" and that he bets that Luger "can already smell those lethal injection drugs." (*Id.* at 8-9.) He states that he would not be surprised if Luger "were killed by the FBI before he can testify." (*Id.* at 7.) Kroger calls for the execution of "at least one federal employee" to "help keep the federal government honest." (*Id.* at 8.) Kroger sent the Kroger Reports to specific individuals involved in his federal case and directly references certain individuals in the reports.

In addition, Kroger insinuates that he will act beyond the legal process, if necessary. He states that "[a] sacrifice must be made. The price must be paid. I am Justice." (*Id.* at 7.) He states that his "departure from the generosity and leniency of [his] previous writings" is due to a "Divine Source." (*Id.*) He calls for "a Second Constitutional Convention, a Second Constitution, and the creation of a Second Republic." (*Id.* at 9.) And he notes that if "Americans can't get law at the courthouse, it's time for the courthouses to fall. There's simply no longer any reason for having them." (Doc. No. 9 at 22.)

The language used within the Kroger Reports is threatening, intimidating, and aggressive. The Court further considers the fact that Kroger sent the Kroger Reports directly to individuals involved in his federal case and sent Kroger Report Part 2 the day before his initial appearance before this Court. The Court agrees with the Magistrate

Judge that Kroger crosses the line into direct threats against individuals involved in this case.

While Kroger argues that the Court should impose a condition restricting further written submissions by Kroger, such restriction would be inadequate. The Court has serious concerns that Kroger poses a threat to potential witnesses in this case, and to the judicial process as a whole, given the content of the Kroger Reports, the circumstances in which they were sent, and the escalation in the severity of Kroger's threats towards specific individuals involved in this case since his indictment. Thus, the Court concludes that no condition or combination of conditions will reasonably assure the safety of the community should Kroger be released pending trial.

**ORDER**

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Kroger's appeal/objection (Doc. No. [38]) to Magistrate Judge David T. Schultz's April 12, 2024, Detention Order is **OVERRULED**.

2. Kroger remains committed to the custody of the Attorney General in accordance with Magistrate Judge Schultz's order of April 12, 2024.

Dated: June 5, 2024                    s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       United States District Judge